UNITED STATES *v.* ROYAL MANUFACTURING COMPANY (No. 4628) [1]

---

[1] C. A. D. 425.

United States Court of Customs and Patent Appeals, February 2, 1950

*David N. Edelstein,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument December 8, 1949, by Mr. Weeks and Mr. Schwartz]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, rendered in conformity with its decision, C. D. 1167, sustaining appellee's protest in which it was claimed that a shipment of rayon waste imported from Canada was dutiable at 10 per centum ad valorem under paragraph 1302 of the Tariff Act of 1930.

The merchandise was invoiced and entered as rayon waste. It consisted of 75 bales of rayon waste material which, according to the analysis of a sample made by the United States Customs Laboratory, was composed of 88.7 per centum viscose rayon and 11.3 per centum cellulose acetate rayon.

The Collector of Customs at the port of New York found that the importation was merchandise consisting of a mixture of cellulose acetate waste commingled with rayon waste; that the two classes of such waste were subject to different rates of duty and were so mingled that the merchandise was not readily segregable; and that appellee did not exercise its right to segregate the merchandise.

Accordingly, by virtue of the provisions of section 508, subjecting commingled merchandise to the highest rate of duty applicable to any part thereof, the collector assessed duty on the whole shipment at the rate of 25¢ per pound, which was the rate applicable to "waste wholly or in chief value of cellulose acetate" in accordance with the provision of paragraph 31 (a) (1) of the Tariff Act of 1930, as modified by the Trade Agreement with the United Kingdom, T. D. 49753.

The pertinent part of paragraph 31 reads:

Par. 31. (a) Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate:

(1) In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, whether or not colloided, and waste wholly or in chief value of cellulose acetate, all the foregoing not made into finished or partly finished articles, 50 cents per pound; * * *

The Trade Agreement with United Kingdom, T. D. 49753, reduced the rate of duty on waste, wholly or in chief value of cellulose acetate, from 50¢ to 25¢ per pound.

Paragraph 1302 of the Tariff Act of 1930 reads:

Par. 1302. Waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate, 10 per centum ad valorem; filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste, whether known as cut fiber, staple fiber, or by any other name, 25 per centum ad valorem; noils of rayon or other synthetic textile, 25 per centum ad valorem; garnetted or carded rayon or other synthetic textile, 10 cents per pound and 25 per centum ad valorem; sliver, tops, and roving, of rayon or other synthetic textile, 10 cents per pound and 30 per centum ad valorem.

Section 508 reads:

## Section 508. Commingling of Goods.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

Counsel for the Government conceded at the outset of the trial that the involved importation "consisted of approximately 89% rayon made by the viscose method, and 11% rayon made by the acetate method, and that the value of the rayon made by the viscose method was greater than the value of the rayon made by the cellulose acetate method." That concession was qualified by the statement that the difference in value was due to the greater difference in quantity.

The imported waste was purchased by appellee from his witness A. Laxer of Montreal, Canada. There Laxer had his place of business in which he had dealt for over twenty-five years in the purchase and sale of textile waste, primarily the waste of rayons and lower grades of artificial silk.

The witness Laxer testified he obtained the imported waste from mills in Canada which manufactured hosiery or draperies; that the importation consisted of sweepings of the threads which had dropped on the floors around the machines during the process of manufacturing rayon drapes and rayon hose; that such threads were first gathered up and put into bags and cartons and later baled and shipped to appellee in one lot, after the removal therefrom of such foreign substances as wood and metal.

The witness Laxer also testified that it would have been a physical impossibility, because of the nature of the waste, to separate the cellulose acetate rayon waste in the shipment from the viscose rayon waste, and he knew of no way in which the two kinds of rayons could be separated.

Adam J. Schwindinger, treasurer of and plant manager for appellee at Perth Amboy, New Jersey, testified that appellee manufactures and blends textile wastes, including rayon waste, into what is known as cotton wiping waste and axle box waste used by railroads; and that for such purposes, it made no difference whether the rayon waste was cellulose acetate rayon or viscose rayon, as the rayon waste was used to mix with other waste merely as a cheapener or binder in producing various types of cotton wiping waste. The witness further testified that his plant handled merely the lowest form of rayon waste, generally considered unusable by other industries, and that no attempt was made to separate or segregate the cellulose acetate rayon.

It was established by the testimony of a duly qualified textile analyst at the United States Customs Laboratory at the port of New York, Harold Fielding, that the sample of the merchandise which was analyzed consisted of a mass of torn and broken yarns, threads, and filaments; that there are three major kinds of rayons; namely, viscose, cuprammonium, which are practically the same, and acetate; and that all three kinds are made from cellulose and all three are known in the trade as rayons.

The witness Fielding also testified that in the present case the result of the analysis of the sample showed 88.7 per centum by weight of viscose rayon and 11.3 per centum by weight of cellulose acetate rayon. It appears that in determining the cellulose content of the sample, the sample was weighed in the laboratory by conditioned weights and then put through a process of acetone which destroyed the cellulose acetate, leaving nothing but the regenerated cellulose. That material was again conditioned and wieghed, and the difference in weight showed the cellulose acetate content.

This witness further testified that the only other method of determining the quantities of the respective rayons in the importation would be a long and tedious process whereby the fibers are separated by colors, after they are dyed and then counted, and that such a separation could not be effected with a bale of waste inside of six months.

The record consists of the testimony of the three witnesses hereinbefore described, all of whom were called by appellee. A small sample illustrating the type of rayon waste here involved was introduced in evidence by appellee as his Exhibit A. It was described by the witness Schwindinger as a low grade of rayon crepe waste. No testimony was introduced by the Government in support of the collector's classification.

The trial court upon the facts presented found that the merchandise as imported did not consist of commingled merchandise, subject to the provisions of section 508, but consisted of an entire shipment of

rayon waste *eo nomine* provided for in paragraph 1302. The court in its opinion made the following succinct statement regarding the question in issue:

Rayon waste is *eo nomine* provided for in paragraph 1302 which covers all rayon waste except such as is "wholly or in chief value of cellulose acetate." By such language it would appear that the Congress contemplated rayon waste in which more than one type of rayon might be included. It is equally clear that waste wholly or in chief value of cellulose acetate is excluded from the provisions of paragraph 1302 and becomes dutiable under the provisions of paragraph 31 (a) (1) which *eo nomine* provides for such waste. Congress contemplated rayon waste which might contain no cellulose acetate or a waste which might include some of the cellulose acetate type or a waste which was in chief value of cellulose acetate. If, as here, the waste in the condition as imported is admittedly rayon waste and it is conceded that it is *not* in chief value of cellulose acetate, it is provided for in paragraph 1302 as claimed. * * * (Italics quoted)

We have carefully examined the contentions and authorities cited by counsel for the Government which tend to establish that the finding and holding of the trial court hereinbefore set forth are contrary to the evidence in the case and contrary to law. We are not convinced, however, that the trial court erred in holding that the merchandise here in issue is properly classifiable as rayon waste under paragraph 1302. That court, in a well-considered opinion, discussed thoroughly all phases of the controversy here involved and we find no reason for disagreement with its conclusion. The judgment of the United States Customs Court is accordingly *affirmed*.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.